◼ EDWARD SOLOMON et al., Respondents, et al., Plaintiffs, v CITY OF NEW YORK, Defendant and Third-Party Plaintiff-Respondent-Appellant, et al., Defendants. LA CROSSE CONSTRUCTION CORP., Third-Party Defendant-Appellant, et al., Third-

Party Defendants. (Action No. 1.) RALPH MANCUSO et al., Respondents, v CITY OF NEW YORK et al., Appellants, et al., Defendants. (And a Third-Party Title.) (Action No. 2.) — In consolidated negligence actions to recover damages for personal injuries, the City of New York appeals, as limited by its brief, from so much of a judgment of the Supreme Court, Kings County (Vaccaro, J.), dated May 25, 1983, as, upon a jury verdict apportioning fault in the happening of the subject accident at 35% on its part and 65% on the part of La Crosse Construction Corp., is in favor of the plaintiffs Edward Solomon, Doyle W. Manley, Ralph Mancuso, and Dominick Durante and against it for certain stated sums, and La Crosse Construction Corp. appeals, as limited by its brief, from so much of the same judgment and a subsequent resettled judgment of the same court, dated July 1, 1983, as, upon the jury's verdict in favor of plaintiffs Solomon and Manley and against the defendant city, is in favor of the city and against it, upon the city's third-party complaint against it for contractual indemnification. The appeal of the defendant city brings up for review those portions of the resettled judgment of the same court, dated July 1, 1983, which are in favor of the plaintiffs Solomon, Manley, Mancuso and Durante and against it (CPLR 5517 [a], [b]).

Appeals from the judgment dated May 25, 1983 dismissed. Said judgment was superseded by the resettled judgment, dated July 1, 1983.

Resettled judgment, dated July 1, 1983, modified, on the law and the facts and as an exercise of discretion, by (1) deleting therefrom the fourth and the part of the sixth decretal paragraphs which are in favor of plaintiff Ralph Mancuso and against the City of New York and substituting therefor a provision severing the action of said plaintiff against the city and granting a new trial with respect thereto limited to the issue of damages only unless said plaintiff serves and files in the office of the clerk of the Supreme Court, Kings County, a written stipulation consenting to reduce the verdict in its favor to the sum of $175,000, (2) deleting therefrom the fifth and the part of the sixth decretal paragraphs which are in favor of plaintiff Dominick Durante and substituting therefor a provision severing the action of said plaintiff against the defendant city and granting a new trial with respect thereto limited to the issue of damages only unless said plaintiff serves and files in the office of the clerk of the Supreme Court, Kings County, a written stipulation consenting to reduce the verdict in his favor to the sum of $200,000, and (3) deleting therefrom the seventh decretal paragraph and substituting therefor a provision dismissing the de-

fendant city's third-party complaint against La Crosse Construction Corp. for contractual indemnification. As so modified, resettled judgment affirmed, insofar as appealed from and reviewed, and the fourth, fifth, sixth and seventh decretal paragraphs of the judgment, dated May 25, 1983, are vacated. The time for plaintiffs Mancuso and Durante to serve and file their respective stipulations is extended until 20 days after service upon them of a copy of the order to be made hereon, with notice of entry. In the event said plaintiffs, or either of them, so stipulate, then the resettled judgment, as so reduced and amended, is affirmed as to said plaintiffs or plaintiff.

One bill of costs is awarded to La Crosse Construction Corp. against the appellant city.

In this consolidated action, plaintiffs Edward Solomon, Doyle W. Manley, Ralph Mancuso and Dominick Durante (hereinafter plaintiffs) and others sought to recover damages for personal injuries allegedly sustained by them as a result of their inhalation of lead fumes during the demolition work at the Brooklyn Navy Yard. At the time of their injuries, plaintiffs were employed as structural iron workers by the La Crosse Construction Corp. (hereinafter La Crosse). La Crosse had contracted with the City of New York, which owned the Navy Yard, for the removal of the structural steel skeletons of certain shipways located in the Yard. At trial, plaintiffs contended, among other things, that the respirators which had been provided to them were not adequate to prevent the inhalation of lead fumes. The lead fumes were caused by the use of plaintiffs' acetylene torches to cut the steel structures, coated with a thick layer of paint, allegedly containing lead. The city and La Crosse contended, *inter alia,* that plaintiffs were provided with proper respirators to limit their exposure to any lead fumes.

The jury found the city 35% liable and La Crosse 65% at fault in causing the plaintiffs' injuries and awarded plaintiffs the following principal sums: Solomon, $380,000; Manley, $360,000; Durante, $305,000; and Mancuso, $295,000. In addition, the trial court determined that the city was entitled to recover on its third-party complaint against La Crosse seeking contractual indemnification. Both the city and La Crosse have now appealed.

On its appeal, the city essentially challenges as error certain portions of the charge to the jury, and further argues that the damages awarded to plaintiffs Manley, Durante and Mancuso were excessive.

The challenged portions of the charge, which have been preserved for our review, do not warrant reversal. The trial court's

instruction to the jury on the responsibilities of the city, pursuant to Labor Law § 241 (6), was not erroneous under the circumstances herein, nor can it be said that the instruction was so confusing as to result in a jury finding of an inordinately high percentage of liability on the part of the city.

Further, a review of the specific instructions to the jury concerning the regulation of the State Board of Standards and Appeals and the regulations promulgated pursuant to the Federal Occupational Safety and Health Act, detailing the types of respirators appropriate for use by plaintiffs and the maintenance of such respirators, indicates that the trial court did not merge two distinct subsections of the State regulations regarding the maintenance of respirators. While there was no need to instruct the jury on the maintenance of air-line respirators since that type of respirator was not used by plaintiffs, the charge in that respect did not create the misimpression that only air-line respirators were appropriate for use by plaintiffs. Moreover, the trial court's recitation of the Federal regulations was not confusing or prejudicial nor did the instruction add to the suggestion that only air-line respirators were appropriate for use by plaintiffs. Finally, we reject the city's contention that the charge with respect to the State and Federal regulations concerning respirators was prejudicial because the trial court prevented the city from presenting evidence that the respirators issued to plaintiffs were, in fact, approved by the State Board of Standards and Appeals. The record indicates that while the trial court initially refused to permit into evidence a certified copy of the State Board of Standards and Appeals certification approving the respirators used by plaintiffs during the cross-examination of plaintiffs' expert witness, Abraham Wallach, nevertheless Wallach did testify that the respirators used, while approved, were not appropriate for the environment of the Brooklyn Navy Yard. Once the certification of approval for the respirators used by plaintiffs was permitted into evidence during the direct examination of the city's expert witness, Seymour B. Feller, the city could have recalled Wallach to the stand for further cross-examination, if warranted.

We do not reach the city's other contentions with respect to the charge, as they have not been preserved for our review.

The city's argument that the damages awarded to Manley were excessive is without merit. The award was appropriate in light of (1) the evidence with regard to the permanency of his injury, (2) his current suffering of symptoms as the result of lead poisoning caused by the inhalation of lead fumes at the Brooklyn Navy Yard, and (3) his inability to work for approximately

six years, resulting in a loss of earnings of approximately $235,000.

However, we do agree with the city that the damage awards to Durante and Mancuso were excessive to the extent indicated. We specifically note with respect to these plaintiffs that there was no testimony as to (1) the permanency of their injuries, (2) the continuation of any acute symptoms as a result of lead poisoning caused by the inhalation of lead fumes at the Brooklyn Navy Yard, or (3) their total unemployment for a substantial period of time as a result of their injuries.

As to La Crosse's appeal, we find that the trial court erred in granting judgment to the city on its third-party complaint against La Crosse for contractual indemnification. Our examination of the contractual language and the surrounding facts and circumstances leads us to the conclusion that the intention to indemnify the city for claims by La Crosse's employees cannot be "clearly implied from the language and purposes of the entire agreement" (*Margolin v New York Life Ins. Co.*, 32 NY2d 149, 153). The contract provision in question states as follows:

"Article 7. Protection of Work and of Persons and Property. During performance and up to the date of final acceptance, the Contractor shall be under an absolute obligation to protect the unfinished work against any damage, loss or injury. The obligation to deliver finished work in strict accordance with the contract prior to final acceptance shall be absolute and shall not be affected by the Engineer's approval of or failure to prohibit means and methods of demolition used by the Contractor.

"During performance and up to the date of final acceptance, the Contractor must take all reasonable precautions to protect *the persons and property of others* from damage, loss or injury resulting from his or his subcontractor's operations under this contract, except such property as the owners thereof may themselves be under legal duty to protect. The Contractor's obligation to protect shall include the duty to provide, place and adequately maintain at or about the site suitable and sufficient guards, lights, barricades and enclosures.

"Within three days after notice to him of the happening of any such loss, damage or injury to work, persons or property, the Contractor shall make a full and complete report thereof in writing to the Engineer.

"If *the persons or property of others* sustain loss, damage or injury resulting from the negligence or carelessness of the Contractor, or his subcontractors, in their performance of this contract, or from his or their failure to comply with any of the provisions of this contract or of law, the Contractor shall indemnify and hold the City harmless from any and all claims and

judgments for damages and from costs and expenses to which the City may be subjected or which it may suffer or incur by reason thereof" (emphasis supplied).

While the instant indemnification clause is broad, the use of the words "the persons or property of others" creates an ambiguity as to whether the clause was intended to provide the city with indemnification for all claims arising out of the work La Crosse contracted to perform, including those claims of La Crosse's employees, or whether the clause was only intended to provide the city with indemnification for claims by third parties. Clearly, if it were intended for La Crosse to assume complete liability, even for its employees' claims, the city could have easily provided that the clause cover " 'claims * * * arising out of the work covered by this contract in favor of, or happening to employees, the public or property' " (*see, Vey v Port Auth.*, 54 NY2d 221, 226), or that La Crosse " 'assumes entire responsibility and liability for any and all damage or injury of any kind or nature to persons whether employees or otherwise * * * and agrees to indemnify and save harmless the owner * * * from and against any and all claims * * * or injury to persons and to property caused * * * by the contractor or its work, or resulting from the use by the contractor, its agents or employees, of any materials, tools, implements * * * or other property' " (*Margolin v New York Life Ins. Co., supra,* at p 153). The interpretation that the provision indicates an intent to indemnify the city for all claims, including those of La Crosse's employees, is not supported by the performance of the contract itself. While La Crosse was to furnish all equipment for the demolition work, which was to be performed totally by La Crosse, the trial evidence indicates that the city, through its inspectors, was present on the job site on a daily basis, and was in charge of the safety for the entire job. Specifically, the city inspectors issued stop-work orders in January 1975, when plaintiffs were diagnosed as suffering from lead poisoning, and ordered La Crosse to resume work with the same respirators they had previously distributed to their employees.

Accordingly, since it cannot be said that indemnification for claims by La Crosse's employees was "the unmistakable intent of the parties" (*Ruhland v Cowper Co.,* 72 AD2d 907, *affd* 52 NY2d 756 for reasons stated at App Div), La Crosse is not required to indemnify the city under the circumstances herein.

In light of our determination that the city is not entitled to indemnification from La Crosse, we need not reach the other issues raised by La Crosse on its appeal. Lazer, J. P., Mangano, O'Connor and Brown, JJ., concur.